UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SURESOURCE LLC,                          :
                                         :
        Plaintiff,                       :       CIVIL ACTION NO.
                                         :
VS.                                      :
                                         :
IGLOO PRODUCTS CORP.,                    :
                                         :       APRIL 19, 2016
        Defendant.                       :

## COMPLAINT

By and for its Complaint against Igloo Products Corp., SureSource LLC alleges as

follows:

### A.    The Parties

1.      Plaintiff SureSource LLC ("SureSource") is a limited liability company organized

under the laws of the State of Connecticut with a place of business located at 20 Constitution

Boulevard South, Shelton, Connecticut 06484.

2.      Upon information and belief, defendant Igloo Products Corp. ("Igloo") is a

corporation organized under the laws of the State of Texas with a place of business located at

777 Igloo Road, Katy, Texas 77494.

### B.    Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332, as the parties are citizens of different states and the amount in controversy is in excess of

14653516-v2

$75,000, exclusive of fees and costs.

4.    This Court has personal jurisdiction over the defendant inasmuch as Igloo has expressly consented to the exercise of jurisdiction by this Court in the contract that is at issue in this litigation.

5.    Venue in this jurisdiction is appropriate pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## C.    The Internet Sales Alliance Agreement

6.    SureSource is an Internet sales and fulfillment company that provides, among other things, a customized, dedicated online marketplace for companies to directly market and sell their products to consumers over the Internet.

7.    Upon information and belief, Igloo is a manufacturing company that produces, among other things, ice chests, beverage coolers, soft-sided coolers and patio coolers.

8.    On or about March 1, 2010, Igloo and SureSource entered into an Internet Sales Alliance Agreement (the "Agreement"). Such Agreement sets forth the terms of an alliance between SureSource and Igloo for the sale of Igloo products through a customized website managed and hosted by SureSource via a dedicated link on Igloo's website (the "Webstore").

9.     Pursuant to Sections 5(a) and 5(b)(i) of the Agreement, the initial term of the Agreement was three (3) years.  Such term automatically renewed for additional terms of two (2) years unless a party provided written notice of termination not less than ninety days prior to the then-current term's expiration date (the "Automatic Renewal Provision").  Neither party ever provided any such notice.  As a consequence, the Agreement automatically renewed in 2015 through the end of February, 2017.

10.     Pursuant to Section 3 of the Agreement, SureSource agreed, among other things, to (i) design, develop, manage and maintain for Igloo an online Webstore, using the URL Igloo-Store.com, which Webstore would be dedicated exclusively to the sale of Igloo products on demand through a designated hyperlink on Igloo's website, (ii) secure and manage all aspects of order processing and fulfillment, (iii) maintain in stock sufficient quantities of Igloo's products to meet actual and anticipated market demand for Igloo products and (iv) establish and maintain a dedicated toll-free telephone number to provide customer service in connection with the placement and fulfillment of orders of Igloo products.

11.     Pursuant to Section 4(d) of the Agreement, Igloo agreed that it would not permit, directly or indirectly, any link to appear on Igloo's website that resolved to a website devoted primarily to the sale of Igloo products other than the link to SureSource's dedicated Webstore (the "Exclusivity Provision").

**D.    Igloo's Website RFP**

12.    Upon information and belief, on or about June 29, 2015, Igloo issued a Request for Proposals (the "RFP") inviting selected third-party vendors to bid on a project to redesign and launch a new Igloo e-commerce website (the "Web Redesign Project").  The RFP included a projected site launch date of December 1, 2015.  Igloo issued the RFP notwithstanding the fact that the Agreement with SureSource had another twenty (20) months to run.  Upon further information and belief, Igloo issued the RFP with the intent of displacing the SureSource Webstore with the new vendor selected via the RFP process.  The RFP was not initially sent to SureSource.  SureSource was not initially invited to bid or otherwise provided with an opportunity to restructure or renegotiate the existing Agreement.

13.    Approximately one month later, on or about July 28, 2015, SureSource inadvertently learned of the RFP during the course of a telephone call with Lisa Hayashi, Director of Brand Management at Igloo.

14.    SureSource expressed surprise upon learning of Igloo's desire to alter and reposition its website sales strategy and seek a new fulfillment arrangement via an RFP process, particularly one that excluded SureSource, the current Webstore vendor with a contract that had another nineteen (19) months to go.

15.    In the face of SureSource's surprise at Igloo's disclosure of its plan to abandon the current Webstore arrangement in favor of a newly-designed website and fulfillment

4

arrangement with a new vendor, Igloo offered to have SureSource submit a bid in response to the RFP. Igloo provided SureSource with a copy of the RFP on July 29, 2015.

16.     Without waving its rights under the parties' Agreement, SureSource was willing to submit a bid in the hope that, if accepted, such bid would render the parties' contractual dispute moot. Accordingly, SureSource submitted a bid without prejudice on August 7, 2015.

17.     In the weeks that followed, SureSource and Igloo engaged in discussions aimed at either (a) restructuring the Agreement to meet Igloo's desire to redesign and re-launch a new webstore, as contemplated by the RFP, or (b) negotiating a buyout of the remaining term of the Agreement.

18.     However, on November 3, 2015, without warning or cause and with sixteen (16) months remaining on the Agreement's current term, Igloo's President, Mark Parrish, notified SureSource's Chief Executive Officer, Rueben Hendell, that Igloo had awarded the RFP to a third party and intended to implement the Website Redesign Project without delay. Such announcement constituted an anticipatory breach of the parties' Agreement, including the Exclusivity Provision. From that point forward, Igloo refused to fulfill its obligations, as required under the parties' Agreement. Specifically, Igloo stopped providing product to SureSource and filling back orders for products, as mandated by the Agreement. The parties also had a dispute as to how much, if any, monies were due Igloo under the Agreement, particularly in view of Igloo's anticipatory breach.

5

19.    In the face of such dispute and Igloo's desire to get out of the Agreement prior to its expiration, the parties endeavored to informally resolve the matter.  SureSource in good faith explored with Igloo an informal resolution via either a restructuring of the Agreement or a buy-out of the remainder of the contract.

20.    In the midst of Igloo's anticipatory breach by reason of its issuance of the RFP and its award of the Web Redesign Project to another vendor, and of Igloo's actual breach by reason of its failure to timely and fully provide product and fill back orders, Igloo in February 2016 sought to declare a breach and treat the Agreement as "terminated" owing to SureSource's supposed "late" cure of an alleged failure to pay certain fees.  Given Igloo's own prior uncured breach and the parties' ongoing settlement negotiations (including with respect to the dispute over how much was owed and by whom), SureSource was entitled to suspend any obligation it had to make payments under the Agreement.

## COUNT ONE
### (Anticipatory Breach)

21.    SureSource incorporates by reference paragraphs 1 through 20 above and repeats and realleges said paragraphs as if fully set forth and alleged in full herein as part of this first count.

22.    The Agreement imposed valid and binding contractual obligations upon Igloo.

23.    At all times relevant herein, SureSource fully performed.  SureSource remained ready, willing and able to fully perform its obligations.

6

24.     Igloo anticipatorily and actually breached the Agreement when it (a) issued the RFP behind SureSource's back, (b) awarded the Web Redesign Project to a third party with the intent of displacing SureSource prior to the expiration of the Agreement and (c) thereafter stopped performing or fulfilling its remaining obligations as required under the Agreement (including its obligation to fill back orders).

25.     As a direct and proximate result of the foregoing material breach, SureSource has been injured and financially damaged in an amount as yet to be fully ascertained, but which is estimated at not less than $730,000.00, exclusive of interest and costs.

## COUNT TWO
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

26.     SureSource incorporates by reference paragraphs 1 through 25 above and repeats and realleges said paragraphs as if fully set forth and alleged in full herein as part of this second count.

27.     By virtue of the Agreement, Igloo owed a duty to SureSource to act in good faith and deal fairly with SureSource, including an obligation to refrain from acting in a manner that prevents or inhibits SureSource from maintaining the Webstore, fulfilling orders placed through such store and otherwise performing under the Agreement.

28.     Igloo breached its implied covenant of good faith and fair dealing by (a) refusing to perform under the Agreement, (b) anticipatorily breaching the Agreement, (c) acting without

7

8

regard to the parties' dispute as to how much monies were owed and by whom and (d) ignoring the parties' ongoing settlement negotiations regarding a restructuring or buy-out of the Agreement, (e) declaring a tactical, pretextual breach and (f) thereafter purporting to "terminate" the Agreement based on SureSource's supposed "late" cure of the non-payment of certain disputed fees.

29.     As a direct and proximate result of said material breach of the implied covenant of good faith and fair dealing, SureSource has been injured and financially damaged in an amount yet to be fully ascertained, but not less than $730,000.00, exclusive of interest and costs.

## JURY DEMAND

SureSource demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff SureSource LLC claims:

A.  Compensatory damages;

B.  Costs and attorneys' fees pursuant to Section 10(c) the Agreement;

C.  Interest; and

D.  Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

SURESOURCE LLC

By  /s/ *Brian E. Moran*
    Brian E. Moran  (ct05058)
    Gregory J. Bennici (ct29698)
    ROBINSON & COLE LLP
    1055 Washington Boulevard
    Stamford, CT 06901
    Tel. No.:  (203) 462-7500
    Fax No.:  (203) 462-7599
    E-mail: bmoran@rc.com
    E-mail: gbennici@rc.com

    *Attorneys for SureSource LLC*

9